UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RAVON SANDERS,

                        Plaintiff,

          v.                                          **DECISION AND ORDER**
                                                         11-CV-441S

OFFICER COUGHLIN and NFTA,

                        Defendants.


## I.  INTRODUCTION

Plaintiff commenced this action under 42 U.S.C. § 1983 on May 20, 2011, alleging

that Defendant Casey Coggins,[2] a law enforcement officer employed by Defendant Niagara

Frontier Transit Authority ("NFTA"), illegally seized and searched him in violation of his

Fourth Amendment rights.   Presently before this Court are Defendants' Motion for

Summary Judgment (Docket No. 51) and Plaintiff's Resubmitted Motion for Summary

Judgment (Docket No. 50).   For the reasons set forth below, Defendants' motion is

granted, and Plaintiff's motion is denied.

## II.  BACKGROUND

On May 19, 2011, Officer Coggins was on bicycle patrol of the above ground rail

stations connected to the City of Buffalo's light rapid rail system.  (Defendant's Statement

of Material Facts ("Defendants' Statement"), Docket No. 53, ¶¶ 1, 6, 7.)  At approximately

12:20 p.m., a citizen stopped Officer Coggins near the outbound Lafayette Square Rail

Station and reported that he believed a man in the vicinity was carrying a gun.

---

[2]Officer Coggins is misidentified in the complaint and caption as "Officer Coughlin."  (See
Defendants' Statement of Material Facts, Docket No. 53, ¶ 5.)  The Clerk will be directed to correct the
caption.

(Defendants' Statement, ¶ 7.)  The citizen described the suspect as a black male wearing a black shirt, a tan baseball hat, and glasses.  (Defendants' Statement, ¶ 7.)  Officer Coggins radioed the police dispatcher to report the information and to request back up.  (Defendant's Statement, ¶¶ 7, 36.)

Meanwhile, Plaintiff was waiting for a rail car at the Lafayette Station.  (Defendant's Statement, ¶ 8.)  He matched the description of the suspect: he is a black male and was wearing a black shirt and tan baseball hat with glasses on it.  (Defendant's Statement, ¶¶ 2, 9.)  Officer Coggins saw Plaintiff board the rail car when it arrived at the station.  (Defendant's Statement, ¶ 10.)  Because Plaintiff matched the description of the suspect, Officer Coggins instructed the dispatcher to hold the rail car while he investigated.  (Defendant's Statement, ¶¶ 11, 36.)

As Officer Coggins maintained visual contact with Plaintiff, a second citizen approached him and reported that he thought an  individual who had just boarded the train had a gun.  (Defendant's Statement, ¶ 12.)  A third citizen joined that conversation and reported that she too thought the individual had a gun.  (Defendant's Statement, ¶ 13.)  Officer Coggins reported this additional information to the dispatcher, who advised Officer Coggins that he would hold the rail car and keep its doors open while Officer Coggins investigated.[1]  (Defendant's Statement, ¶¶ 14, 36.)

Immediately after this report, Plaintiff leaned out of the open door of the rail car.  (Defendant's Statement, ¶ 15.)  Officer Coggins was standing alongside the rail car,

---

[1]Audio recordings of the communications described herein between Officer Coggins and the dispatcher are part of the record.  (See Defendants' Statement, ¶¶ 32-36.)  This Court could not, however, access the audio files.  In any event, the content of the communications are not in dispute.

observed Plaintiff lean out, and instructed him to go back into the rail car and sit down. (Defendant's Statement, ¶ 16.)  Plaintiff did not comply, and instead, leaned out further. (Defendant's Statement, ¶ 16.)  As he did so, Officer Coggins observed a square bulge in Plaintiff's waistband under his shirt, which he believed resembled the butt of a gun. (Defendant's Statement, ¶ 17.)  Plaintiff then motioned with his right hand in front of his waist.  (Defendant's Statement, ¶ 18.)  Believing that Plaintiff may have a gun, Officer Coggins drew his weapon in response and ordered Plaintiff out of the rail car and against the station wall.  (Defendant's Statement, ¶¶ 17, 18.)  Plaintiff complied with Officer Coggins's order and stood with his hands on the wall and his feet spread.  (Defendant's Statement, ¶ 19.)  Officer Coggins, assisted now by a Buffalo Police officer, conducted a pat-down search of Plaintiff while other Buffalo Police officers searched the rail car. (Defendant's Statement, ¶¶ 20, 21.)

The pat-down search revealed a wad of newspapers folded into an "L" shape tucked into Plaintiff's waistband.  (Defendant's Statement, ¶ 22.)  Officer Coggins then requested that Plaintiff produce identification, which he did.  (Defendant's Statement, ¶ 23.)  Officer Coggins was unable to gather any more information about Plaintiff, however, because the NFTA computer system was not operating.  (Defendant's Statement, ¶ 24.)  Plaintiff was then advised that he could leave.  (Defendant's Statement, ¶ 25.)

Plaintiff's interaction with Officer Coggins lasted approximately five minutes, from the moment Plaintiff first leaned out of the rail car to his release.[2]

---

[2]Video recordings of these events are part of the record and have been reviewed by this Court. (See Defendants' Statement, ¶¶ 37-39.)

## III.  DISCUSSION

Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally, and interpret them to raise the strongest arguments that they suggest.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).   This is especially important when reviewing pro se complaints alleging civil rights violations.  See Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001).  Since Plaintiff is proceeding pro se, this Court has considered his submissions and arguments accordingly.

In his complaint, Plaintiff describes the nature of his suit as "illegal detention, ongoing harassments and threat to life, liberty and pursuits of happiness."  (Complaint, ¶ 2(B).)  He notes that he previously filed suit against the NFTA, which ended with the late Honorable John T. Elfvin, United States District Judge, dismissing his case at the close of his proof.  See Sanders v. Ritzer, et al., 97-CV-20E, Docket No. 52.

Throughout his submissions to the court, and in particular in his supplement to his complaint (Docket No. 7) and his Resubmitted Motion for Summary Judgment (Docket No. 50), Plaintiff references the Ritzer action and other encounters he had with NFTA officers over the years, including incidents in 1995 (allegedly arrested for not having proof of fair), 1996 (allegedly arrested and prosecuted for selling transfers, resisting arrest, and disorderly conduct, resulting in acquittal), and 2009 or 2010 (allegedly stopped and detained by NFTA officers for making an illegal turn). (See also Docket No. 33 (discussing Plaintiff's claims.)  Plaintiff also references an incident that post-dates his complaint in this case: an interaction on May 22, 2014, during which an NFTA officer stopped him for smoking a cigar in a rail station and searched his bag.  (Docket No. 50, p. 6.)  These

incidents underlie Plaintiff's oft-repeated claims of a long-running course of harassment by NFTA personnel spanning 20 years.

This case, however, involves only Plaintiff's interaction with Officer Coggins on May 19, 2011. That interaction gives rise to two claims, both under the Fourth Amendment: illegal seizure and illegal search. No other claims can reasonably be gleaned from Plaintiff's complaint and supplement in this action. The Fourth Amendment claims are discussed below.

## A.      Defendants' Motion for Summary Judgment

### 1.      Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S.

at 249. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). That is, there must be evidence from which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 252.

### 2.   Section 1983: Fourth Amendment Claims

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)). Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged. See Baker, 443 U.S. at 140. Here, Plaintiff's § 1983 claims are that Officer Coggins (and NFTA) illegally seized and searched him in violation of his Fourth Amendment rights.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend IV.  Seizure occurs within the meaning of the Fourth Amendment when "by means of physical force or show of authority," a law enforcement officer "has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S. Ct. 1868, 201 L. Ed. 2d 889 (1968); see Florida v. Bostick, 501 U.S. 49, 434, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991).

The United States Supreme Court has recognized that police officers may in "appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry, 392 U.S. at 22.  Such an interaction has been termed a "Terry stop" and may be conducted when a police officer reasonably believes that criminal activity "may be afoot." Id. at 30.  To initiate such an investigative stop, the officer must have reasonable suspicion—"a reasonable basis to think that the person to be detained 'is committing or has committed a criminal offense.'" United States v. Bailey, 743 F.3d 322, 332 (2d Cir. 2014) (quoting Arizona v. Johnson, 555 U.S. 323, 326, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009)); see also United States v. Padilla, 548 F.3d 179, 186 (2d Cir. 2008) (noting that an officer may briefly detain an individual upon "a reasonable suspicion that the individual is, has been, or is about to be engaged in criminal activity").  Reasonable suspicion "demands specific and articulable facts which, taken together with rational inferences from those facts, provides detaining officers with a particularized and objective basis for suspecting legal wrongdoing." Dancy v. McGinley, 843 F.3d 93, 106 (2d Cir. 2016) (quotations and citations omitted).

A Terry stop must be "justified at its inception." Terry , 392 U.S. at 20. That is, the police officer must have had a "particularized and objective basis" for suspicion of wrongdoing under the "totality of the circumstances." United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (citing United States v. Cortez, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981)).

"Under this long-established exception, if a police officer has a reasonable suspicion of criminal wrongdoing, then the police officer may briefly detain a suspect for investigative purposes (*e.g.* for questioning) and may also conduct a frisk or a patdown of the person to assure the officer's personal safety during the stop if the officer has reasonable grounds to believe the suspect to be armed and dangerous." United States v. Robertson, No. 3:16-cr-107(JAM), 2017 WL 931615, at *11 (D. Conn. Mar. 8, 2017). This search must be limited: "a protective search—permitted without a warrant and on the basis of reasonable suspicion less than probable cause—must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby," and "[i]f the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry . . . ." Minnesota v. Dickerson, 508 U.S. 366, 373, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993).

Because an objective standard applies, "the subjective intentions or motives of the officer making the stop are irrelevant." United States v. Bayless, 201 F.3d 116, 133 (2d Cir. 2000).

The facts related to the Terry stop in this case are largely undisputed[3] and are memorialized on video, which this Court has reviewed.  Boiled to its essence, Plaintiff's claim amounts to his belief that Officer Coggins should have acted differently.  He contends that Officer Coggins had "ample time to observe plaintiff, and could have approached plaintiff and inquired direct from plaintiff the nature of the so called bulge in his pocket."  (Docket No. 50, p. 2.)  Plaintiff takes issue with Officer Coggins drawing his weapon "with an unfair justification that he was informed by pedestrians that plaintiff had a bulge in his pocket that might be a weapon."  (Docket No. 50, p. 2.)  Plaintiff articulates no other grounds for a Fourth Amendment violation.

Plaintiff's contention—that Officer Coggins should have pursued a different course of action—does not support a Fourth Amendment claim.  Rather, this was objectively a valid Terry stop.  Officer Coggins received reports from three citizens that Plaintiff may have a gun.  Acting on those reports, he observed Plaintiff himself and saw what he believed to be a bulge in Plaintiff's waistband consistent with the shape of a gun.  When confronted by Plaintiff leaning out of the rail car, Officer Coggins gave Plaintiff a direct instruction, which Plaintiff disobeyed.  Rather, Plaintiff continued to engage with Officer Coggins and moved his right hand near his waistband, where Officer Coggins believed there may be a firearm.

Given these facts, Officer Coggins had reasonable suspicion to believe that criminal conduct may be afoot and that Plaintiff was armed and dangerous.  See Terry, 392 U.S.

---

[3]Plaintiff's only dispute appears to concern whether any individuals approached Officer Coggins and told him that Plaintiff had a gun.  (Docket No. 58.)  Plaintiff disputes this point because Defendants did not submit any witness statements and he did not personally observe Officer Coggins speaking to anyone. (Docket No. 58.)  The video of the incident, however, clearly shows Officer Coggins speaking to the second and third individuals who each reported that Plaintiff had a gun.

at 22; Robertson, 2017 WL 931615, at *11.  He was therefore authorized to conduct a Terry stop and to search Plaintiff to ensure officer safety.  Officer Coggins's search of Plaintiff was limited to only that necessary to determine whether Plaintiff posed a threat of harm to himself or others.  Dickerson, 508 U.S. at 373. Once Officer Coggins made that determination, his search ended and he released Plaintiff shortly thereafter.  In this Court's view, no reasonable trier of fact presented with these facts could find that a Fourth Amendment violation occurred.  Defendants are therefore entitled to summary judgment.

Defendant NFTA is also entitled to summary judgment on the independent ground that it cannot be held liable under a theory of *respondeat superior*.  Section 1983 imposes liability on a municipality that's official custom or policy *causes* an employee to violate an individual's constitutional rights.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Like supervisory liability, municipal liability in the context of § 1983 actions cannot be premised solely on a *respondeat superior* theory, but must be based on constitutional deprivations caused by an officially promulgated, or *de facto*, governmental "custom" or "policy[.]"  Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986).  The Monell standard applies to the NFTA. See Eslin v. Hous. Auth. of Mansfield, No. 3:11-CV-134 (JCH), 2012 WL 113666, at *3 (D. Conn. Jan. 13, 2012) ("The Second Circuit and district courts within it have repeatedly held that Monell's "policy or custom" standard applies to independent public corporations created under state law, such as transit and housing authorities." (collecting cases)).

The existence of municipal policy or custom can be demonstrated in several ways, including: (1) showing an officially promulgated and endorsed municipal policy, Monell, 436

U.S. at 658; (2) showing that actions taken by officials with final policymaking authority caused a constitutional violation, Pembaur, 475 U.S. at 480–81; (3) showing that municipal decisionmaking evidences "deliberate indifference" to the rights of those with whom municipal employees come in contact, including failure to remedy an otherwise constitutional policy so deficient that policymakers knew or should have known with a high degree of certainty that constitutional violations could result, City of Oklahoma City v. Tuttle,  471 U.S. 808, 819, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985), or failure to train employees when training is necessary to prevent the violation of federal rights, City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

Here, even assuming Fourth Amendment violations, Plaintiff does not allege or come forth with any evidence at all of an official custom or policy of the NFTA that caused Officer Coggins to violate his constitutional rights.  The NFTA is therefore also entitled to summary judgment on this ground.[4]

## B.      Plaintiff's Resubmitted Motion for Summary Judgment

Plaintiff filed a Resubmitted Motion for Summary Judgment after the court denied a previously-filed Motion for Summary Judgment as premature. (Docket Nos. 4, 8.) In light of the analysis above and this Court's determination that Defendants are entitled to summary judgment, Plaintiff's motion seeking the same relief in his favor will be denied.

---

[4]The NFTA also argues that it is entitled to summary judgment on Eleventh Amendment immunity grounds.  Whether the NFTA is entitled to such immunity has caused a split of authority.  See Reville v. Niagara Frontier Transp. Auth., No. 04-CV-258, 2009 WL 5167645, at *5-*6 (W.D.N.Y. Dec. 20, 2009) (discussing split of authority).  In any event, because this Court finds that the NFTA is otherwise entitled to summary judgment, it need not address this argument.

### IV.  CONCLUSION

For the foregoing reasons, this Court finds that Defendants are entitled to summary judgment in their favor.   Their motion seeking such relief will therefore be granted. Plaintiff's Resubmitted Motion for Summary Judgment will be denied.

### V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 51) is GRANTED.

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 50) is DENIED.

FURTHER, that the Clerk of Court shall CORRECT the caption of this case to substitute "Officer Coggins" for "Officer Coughlin."

FURTHER, that the Clerk of Court shall CLOSE this case.

SO ORDERED.


Dated:   March 30, 2017
         Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge